UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                :
ex rel. KYRIAKIE SARAFOGLOU,
                                        :
                Plaintiff,                      **OPINION**
                                        :
        - against -                             03 Civ. 6761 (DC)
                                        :
WEILL MEDICAL COLLEGE OF CORNELL
UNIVERSITY, NEW YORK-PRESBYTERIAN       :
HOSPITAL, ANTONIO M. GOTTO, JR.,
M.D., BARBARA PIFEL, MARIA I. NEW,      :
M.D., LAUREN BEAMUD, SUSANNA
CUNNINGHAM-RUNDLES, NOEL MACLAREN,      :
M.D., GREGORY SISKIND, M.D.,
MICHAEL WAJNRAJCH, M.D., MADELEINE      :
HARBISON, M.D., PATRICIA GIARDINA,
M.D., and JAMES BUSSEL, M.D.,           :

                Defendants.             :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   (See last page)

**CHIN, D.J.**

        In September 2003, plaintiff Kyriakie Sarafoglou
brought a qui tam action on behalf of the United States,
alleging, inter alia, that defendants violated the False Claims
Act (the "FCA"), 31 U.S.C. § 3729 et seq., by (1) submitting
false claims to obtain federal research funds, and (2)
retaliating against her when she expressed concerns to her
supervisors about the false claims.  After two years of
investigating the allegations, the United States partially
intervened in the case in June 2005.

        At the same time that the United States decided to
intervene, it also reached a settlement with defendant Weill
Medical College of Cornell University ("Cornell Medical").

(Tiska Ex. H).  The settlement released Cornell Medical and the individual defendants from certain claims under the FCA.  (Id. ¶ III.3).  Defendant New York-Presbyterian Hospital ("NYPH"), an affiliate of Cornell Medical, was not covered by the settlement agreement.  (Id.).  Because the case was brought by Dr. Sarafoglou under the qui tam provisions of the FCA, she received a share of the settlement.

Notwithstanding the settlement, Dr. Sarafoglou served an amended complaint against defendants in October 2005, pursuing claims that she asserted were not covered by the settlement agreement.  (Compl. ¶¶ 11, 13).[1]

Defendants move to dismiss the first amended complaint, arguing, inter alia, that plaintiff's claims: (1) are barred under the principles of res judicata; and (2) do not meet the pleading standards imposed by Rule 9(b) of the Federal Rules of Civil Procedure.

Defendants' motions to dismiss are granted in part and denied in part.

## BACKGROUND

### A.    The FCA

Under the qui tam provisions of the FCA, private persons may bring civil actions for violations of § 3729(a).  These suits are brought in the name of the Government and the plaintiff, or "relator," must provide the Government with a copy

---

[1]    "Compl." refers to the First Amended Complaint, which was filed on October 28, 2005.

of the complaint and written disclosure of all material evidence and information.  31 U.S.C. § 3730(b)(2).  The complaint remains under seal for at least 60 days; during that time the Government decides to either: a) proceed with the action; or b) decline to take over the action, leaving the relator with the right to conduct the action.  31 U.S.C. § 3730(b)(4).  "Partial interventions are allowed," United States v. St. Joseph's Reg'l Health Ctr., 240 F. Supp. 2d 882, 888 (W.D. Ark. 2002) (citing United States ex rel. O'Keefe v. McDonnell Douglas Corp., 918 F. Supp. 1338 (E.D. Mo. 1996)), where the Government intervenes as to certain claims, see, e.g., United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc., No. Civ. A. 5:00CV-39-M, Civ. A. 5:99CV-170-M, 2004 WL 2403114, at *3 (W.D. Ky. Sept. 30, 2004), or as to certain defendants, see, e.g., Klaczak v. Consol. Med. Transp. Inc., No. 96 C 6502, 2005 WL 1564981, at *1 (N.D. Ill. May 26, 2005).  If the prosecution is successful, the relator is entitled to receive some of the proceeds.  31 U.S.C. § 3730(d).

**B.   Facts**

        For purposes of this motion to dismiss, the facts as alleged in the amended complaint are assumed to be true.

    **1.   Federal Funding for Clinical Research**

        Each year, the federal government distributes more than $1 billion in research funds to a network of general clinical research centers ("GCRCs").  (Compl. ¶ 4).  The funds are distributed through a division of the National Institutes of

Health ("NIH") to provide clinical researchers and scientists with resources to conduct research to improve human health. (<u>Id.</u> ¶¶ 4, 5).

To obtain federal funding, a GCRC must submit an application to the NIH.  GCRCs are funded in five-year cycles, with continued funding dependent upon competitive renewals. (<u>Id.</u> ¶ 32).  Each year during the five-year cycle, however, the entity receiving the research grant must apply for approval for continuation of the grant. (<u>Id.</u>).  The amount of funding is determined by the applicant's projections of the activity expected for each research protocol. (<u>Id.</u> ¶ 35).

From 1968 to 2004, Cornell Medical operated a GCRC called the Children's Clinical Research Center (the "CCRC"). (<u>Id.</u> ¶ 7).  Focusing on pediatric clinical research, Cornell Medical received a grant from the NIH for approximately $23 million for the period December 1, 1998 through November 30, 2003 (NIH Grant No. 5M01RR006020) ("Grant 5M0"). (<u>Id.</u> ¶ 32).  Cornell Medical also received a grant of approximately $2.6 million for the period July 1, 1997 through June 30, 2002 for certain clinical research projects on androgen metabolism (NIH Grant No. HD00072) ("Grant HD0"). (<u>Id.</u>).  In all, Cornell Medical received at least $25 million in federal funding from 1998 to 2003. (<u>Id.</u> ¶ 7).

### 2.   **False Claims to Obtain Federal Funds**

Defendants submitted false claims to obtain federal funding by: (1) knowingly overstating the projected activity of

certain research protocols to obtain more funding (id. ¶¶ 41-74);
(2) knowingly miscategorizing research patients, both by
enrolling certain patients under specific research protocols --
even though they did not meet the medical criteria for inclusion
-- and also by assigning patients the wrong billing category (id.
¶¶ 75-99); and (3) knowingly misusing grant funds designated for
certain laboratories in violation of NIH guidelines (id. ¶¶ 100-
05).

### 3.   Retaliation

Shortly after joining the CCRC as an assistant
professor of Pediatric Medicine in July 2001, Dr. Sarafoglou
uncovered the misuse of NIH resources by the CCRC.  (Id. ¶¶ 10,
106, 110).  As a result, in spring 2002, plaintiff presented her
concerns to Dr. New, then program director of the CCRC and Dr.
Sarafoglou's direct supervisor.  (Id. ¶ 111).  After plaintiff
presented these concerns, Dr. New and Cornell Medical "exclud[ed]
her from meetings, solicit[ed] complaints about her from other
individuals within the CCRC and NYPH, and recommend[ed] that she
receive an 'administrative referral' that would blemish her
career."  (Id. ¶ 112).

In addition to speaking to Dr. New about her concerns,
on or about September 10, 2002, plaintiff submitted an internal
complaint to Dr. Gerald M. Loughlin, who had replaced Dr. New as
chair of the Pediatric Department of NYPH.  (Id. ¶ 114).  The
submission detailed the CCRC's misuse of government funds.
(Id.).  This submission led Dr. David Hajjar, vice provost and

dean of the Graduate School of Medical Sciences at Cornell Medical, to appoint Dr. Adam Asch to investigate Dr. Sarafoglou's allegations.  (Id. ¶ 116).

During this investigation, Dr. New routinely blocked Dr. Sarafoglou's patients' appointments, removed her from the pediatric endocrinology division attending on-call schedule, and referred metabolic patients to doctors at other hospitals instead of to her.  (Id. ¶ 117).  Moreover, plaintiff no longer received timely notice of institutional regulatory meetings, and she was locked out of file drawers in her office that contained basic information necessary to her duties as the research subject advocate at the CCRC.  (Id.).  Dr. Sarafoglou's complaints of retaliation to Dr. Loughlin went unheeded.  (Id. ¶ 118).

On November 4, 2002, a report was issued by Dr. Asch on the investigation (the "Asch Report"), concluding that there was no merit to Dr. Sarafoglou's allegations.  (Id. ¶ 119).  Dr. Sarafoglou submitted a response to Dr. Hajjar refuting the findings of the Asch Report, and urging Dr. Hajjar to revisit the issues raised in the investigation.  (Id. ¶ 121).  On December 12, 2002, Dr. Loughlin of Cornell Medical notified Dr. Sarafoglou that she was being removed from her position as research subject advocate.  (Id. ¶ 122).

On January 7, 2003, plaintiff filed a complaint with the NIH alleging misconduct and financial fraud.  (Id. ¶ 123).  Soon after, Dr. Sarafoglou was relieved from her position within the Division of Pediatric Endocrinology and was reassigned to

Cornell Medical's resident group practice.  (Id. ¶ 124).  This constituted a demotion that impaired plaintiff's ability to conduct clinical research.  (Id.).  On July 1, 2003, Dr. Sarafoglou was given written notice that her faculty appointment as assistant professor of pediatrics at Cornell Medical would not be renewed upon its expiration on June 30, 2004.  (Id. ¶ 127). Dr. Sarafoglou performed her duties in no less than a satisfactory manner at all relevant times.  (Id. ¶ 109).

## C.  **Procedural History**

Plaintiff filed a sealed complaint against Cornell Medical, the individual defendants, and NYPH under the qui tam provisions of the FCA in September 2003 (the "Original Complaint").  (Tiska Decl. Ex. D).  The Original Complaint alleged that the defendants made false statements to the United States to obtain federal research funds (id. ¶¶ 31-103), and further, that these defendants retaliated against Dr. Sarafoglou when she told her supervisors that she was concerned about the misrepresentations (id. ¶¶ 104-26).

In June 2005, approximately two years after the Original Complaint was filed, the Government filed a Notice of Election to Intervene, in which it notified the Court that it was electing "to partially intervene and proceed with this action" against Cornell Medical.  (Tiska Decl. Ex. F).  In its Complaint-In-Intervention, the United States asserted claims against Cornell Medical alone, for violations of the FCA, common law fraud, unjust enrichment, and payment made under mistake of fact.

- 7 -

(Tiska Decl. Ex. G. ¶¶ 134-56).

At the same time that the United States filed its
Notice of Election to Intervene, it also submitted a Stipulation
and Order of Settlement and Dismissal (the "Settlement
Agreement") that it entered into with Cornell Medical.  (Tiska
Decl. Ex. H).  According to the Settlement Agreement, "the United
States and [Cornell Medical] mutually agree to reach a full and
final settlement and compromise of the claims that the United
States asserts against [Cornell Medical] based on the Covered
Conduct."  (Tiska Decl. Ex. H § II.F).

The Settlement Agreement defined "Covered Conduct" as
the conduct occurring during the period between December 1995
through November 2003 -- when Cornell Medical applied to the NIH
for Grant 5M0 and allegedly submitted false statements and claims
in connection with that grant.  (Id. at § II.C).  The Settlement
Agreement also referenced the Complaint-In-Intervention for a
more descriptive account of the "Covered Conduct."  (Id.).

Neither the Settlement Agreement nor the Complaint-In-
Intervention addressed Cornell Medical's conduct with respect to
retaliation.  They also did not address any false claims in
connection with Grant HD0 for research projects on androgen
metabolism.

A few months after the settlement, in October 2005,
plaintiff filed the first amended complaint in this case.
Plaintiff asserts that she was bringing claims that had not been
resolved by the settlement between the United States and Cornell

- 8 -

Medical.  (Compl. ¶¶ 11-14).  She asserts three counts against defendants.  Count One alleges false claims in violation of 31 U.S.C. §§ 3729(a)(1), (a)(2), and (a)(7) against all defendants. (Id. ¶¶ 129-30).  Count Two alleges conspiracy to submit false claims in violation of 31 U.S.C. § 3729(a)(3) against all defendants.  (Id. ¶¶ 131-32).  Count Three alleges retaliation in violation of 31 U.S.C. § 3730(h), but only against Cornell Medical, NYPH, Dr. New, and Dr. Gotto.  (Id. ¶¶ 133-34).

Cornell Medical and the individual defendants jointly move to dismiss.  NYPH moves separately to dismiss.

## DISCUSSION

Defendants argue that plaintiff's claims should be dismissed because: (1) they are barred by the doctrine of res judicata, and (2) they have not been pled sufficiently.  I address the two arguments in turn.

## A.   Res Judicata

Under the well-settled doctrine of res judicata, a subsequent action is barred where: (1) the prior action concluded with a final adjudication on the merits; (2) the prior claims and the current claims involve the same parties or those in privity with them; and (3) the claims asserted in the present action were, or could have been, asserted in the prior action because they arise from a common nucleus of operative fact.  See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

In the <u>qui tam</u> context, the relator is in privity with the Government.  <u>See, e.g.</u>, <u>United States ex rel. Barajas v. Northrop Corp.</u>, 147 F.3d 905, 910 (9th Cir. 1998) ("A qui tam relator has Article III standing to sue only as a relator, on behalf of the government.  His standing is in the nature of an assignee of the government's claim.") (citation omitted).  Thus, if <u>res judicata</u> is deemed applicable against the Government, then a relator's claims are foreclosed as well.  <u>Id.</u>; <u>United States ex. rel. Barmak v. Sutter Corp.</u> (<u>Barmak I</u>), No. 95 Civ. 7637 (KTD) (RLE), 2002 WL 987109, at *3 (S.D.N.Y. May 14, 2002) ("regardless of the parties' intent [in settling the claims], if the government's claims are barred, so are the relator's").

Applying the principles set forth, I review whether the claims in the amended complaint are barred by <u>res judicata</u>.

### 1. **False Claims**

#### a. **Cornell Medical**

The claims against Cornell Medical in Count One of the amended complaint are foreclosed, insofar as they are related to Grant 5M0.

First, the Settlement Agreement with the resulting dismissal, with prejudice, constituted a final judgment on the merits.  <u>See, e.g.</u>, <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 287 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes."); <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1238 (11th Cir. 1999) (finding a

- 10 -

settlement agreement and executed stipulation of dismissal in <u>qui</u> <u>tam</u> suit to be a final judgment in <u>res judicata</u> context); <u>see</u> <u>also</u> <u>Greenberg v. Bd. of Governors of the Fed. Reserve Sys.</u>, 968 F.2d 164, 168 (2d Cir. 1992) ("Settlements may also have preclusive effect.").

Second, the same parties are involved in both suits. Cornell Medical was charged with false claims in both the Government's Complaint-In-Intervention as well as the plaintiff's current complaint. Moreover, the Government and Dr. Sarafoglou are in privity, and thus, are considered to be the same party for <u>res judicata</u> purposes.

Third, the false claims asserted in both the Government's Complaint-In-Intervention and the current complaint arise from the same nucleus of operative fact. Specifically, the conduct out of which the false claims arise primarily involves Cornell Medical's submission of false statements in its application to the NIH for Grant 5M0.

The descriptions contained in both the Government's Complaint-In-Intervention as well as the Settlement Agreement confirm that the first suit was based primarily on these false statements. For example, the Complaint-In-Intervention describes the suit as a civil action brought to recover damages "as a result of [Cornell Medical's] having knowingly presented or caused to be presented to the United States false or fraudulent claims for payment in connection with" Grant 5M0. (Tiska Decl. Ex. G. ¶ 1). Similarly, the Settlement Agreement describes the

"Covered Conduct" as the conduct during the period between December 1995 through November 2003 when Cornell Medical applied to the NIH for research Grant 5M0, and allegedly submitted false statements and claims in connection with that grant.  (Tiska Decl. Ex. H. ¶ II.C).

Because the false claims from the current complaint all arise from the same nucleus of operative fact, they are foreclosed by the Settlement Agreement under principles of <u>res judicata</u>.  <u>See</u> <u>Barajas</u>, 147 F.3d at 910-11 (barring an FCA claim under <u>res judicata</u> because it was part of the same transactional nucleus of fact as a previous FCA claim brought by the Government); <u>Barmak I</u>, 2002 WL 987109, at *3-4 (applying <u>res judicata</u> to prohibit subsequent FCA claims in connection with Medicare reimbursements that were part of the same transaction); <u>see also</u> <u>Ragsdale</u>, 193 F.3d at 1240 (barring relator's FCA retaliatory discharge claim under <u>res judicata</u> because it arose out of same nucleus of operative fact as his FCA <u>qui tam</u> claim).

Nevertheless, plaintiff asserts that the false claims that she is bringing in her amended complaint were not covered by the Complaint-In-Intervention or the settlement.  (Compl. ¶¶ 11-14).  Her attempt at distinguishing them are to no avail.  For example, plaintiff argues that the Complaint-In-Intervention is largely based on Cornell Medical's violation of the 33% guideline,[2] while the current complaint alleges greater

_____

[2]     The 33% guideline refers to the rule that no single group of researchers or category of research can expend more than 33% of the federal research funds provided to them in a grant.

misconduct.  (Plaintiff's Brief ("Pl. Br.") at 18-19).  Plaintiff

proceeds to give a laundry list of the allegedly greater

misconduct, including, <u>inter alia</u>, the fact that "research funded

by the pharmaceutical companies were charged to the grant," that

there was "misuse of the core laboratories material resources"

funded by the grant, and that there was "a broad scheme to

falsify outpatient information."  (<u>Id.</u> at 19).  All of this,

however, is part of the broader claim that defendant submitted

false claims to obtain federal funds.  Thus, the mere fact that

the plaintiff alleges greater misconduct in the amended complaint

is of no consequence because ultimately all the false claims in

the current complaint are based on the same nucleus of operative

fact.  <u>See, e.g.</u>, <u>Waldman v. Vill. of Kiryas Joel</u>, 207 F.3d 105,

110-11 (2d Cir. 2000) ("[C]ases consistently hold that the facts

essential to the barred second suit need not be the same as the

facts that were necessary to the first suit.").

        Thus, to the extent that the false claims against

Cornell Medical are based on Grant 5M0, they are foreclosed by

<u>res judicata</u>.  Plaintiff does, however, set forth allegations

with respect to a different federal grant -- Grant HD0, which

funded clinical research projects on androgen metabolism.

(Compl. ¶ 33).  To the extent that plaintiff's false claims

---

(Tiska Decl. Ex. G. ¶ 13).  The idea is that allowing one
discipline or researcher to expend more than 33% of the federal
funds would permit one researcher to dominate federal resources
at the expense of the federal government.  (<u>Id.</u> ¶ 14).  Thus,
applications and renewals for grants require that the institution
document its compliance with this guideline.

relate to this grant, they are not barred by <u>res judicata</u> because false statements and claims made in connection with a different grant would not be part of the same transactional nucleus of fact.

**b.   <u>Individual Defendants</u>**

Not only are the false claims based on Grant 5M0 barred against Cornell Medical, but they are also barred against the individual defendants because the Settlement Agreement expressly released the individual defendants from liability.  According to the Settlement, the Government:

> agrees to release [Cornell Medical] . . . [its] subsidiaries and all of its current and former officers, directors, trustees, overseers and employees . . . from any civil or administrative monetary claim the [Government] has or may have against the released persons and entities for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

(Tiska Decl. Ex. H. § III.3).

Plaintiff argues that <u>res judicata</u> does not bar false claims against the individual defendants because in the Government's Notice of Election to Intervene, it stated its intention to only "<u>partially</u> intervene."  (Pl. Br. at 16-18).

But <u>res judicata</u> is applicable where a settlement agreement releases defendants, even if they were not named parties in the action.  <u>See</u> <u>Leptha Enters., Inc. v. Longenback</u>, No. 90 Civ. 7704 (KTD), 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) ("The defensive use of res judicata is not precluded when a plaintiff settles a prior pending action knowing the present

defendant's role in the activities which formed the basis of the prior suit but chose not to name that defendant as party to that suit."); see also Cahill v. Arthur Andersen & Co., 659 F. Supp. 1115, 1120-21 (S.D.N.Y. 1986).  Thus, all the claims against the individual defendants based on Grant 5M0 are foreclosed by res judicata.

        c.   **NYPH**

      The Settlement Agreement provided explicitly that NYPH was not released and that NYPH was not covered by its terms. Thus, none of the claims against NYPH -- including the false claims, the conspiracy to submit false claims, and retaliation -- are barred by res judicata.  The Settlement Agreement states in relevant part that the Government:

> agrees to release [Cornell Medical], its predecessors, successors, parents, affiliates (except NYPH) . . . from any civil or administrative monetary claim the United States has or may have against the released persons and entities for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

(Tiska Decl. Ex. H. § III.3) (emphasis added).

      Accordingly, none of the claims against NYPH are foreclosed by res judicata.

## 2.  **Conspiracy to Submit False Claims Against Cornell Medical and Individual Defendants**

      The claims in the Second Count of the amended complaint -- alleging the conspiracy to submit false claims in violation of 31 U.S.C. § 3729(a)(3) -- are similarly barred under the doctrine of res judicata because they arise from the same nucleus of

operative fact as the false claims in the First Count.  The <u>res</u>
<u>judicata</u> bar "extends both to issues actually decided in
determining the claim asserted in the first action and [to]
issues that could have been raised in the adjudication of that
claim."  <u>See</u> <u>Greenberg</u>, 968 F.2d at 168 (internal citation and
quotations omitted).  Because the conspiracy to submit false
claims in connection with Grant 5M0 could have been alleged in
the first suit, this claim is now foreclosed, except as to NYPH.

>        **3.    Retaliation Claims Against Cornell Medical, Dr. New,
>               Dr. Gotto, and NYPH**

        None of the retaliation claims alleged by plaintiff are
barred by <u>res</u> <u>judicata</u> because the Government never alleged any
retaliation claims in its Complaint-In-Intervention, and the
settlement never addressed any such claims.

**C.    Remaining Claims**

        The following claims, therefore, are not barred by <u>res</u>
<u>judicata</u>: (1) Counts One and Two as to both grants with respect
to NYPH, and as to Grant HD0 with respect to Cornell Medical and
the individual defendants; and (2) Count Three as to Cornell
Medical, NYPH, and Drs. New and Gotto.

        I review the remaining claims to determine whether they
have been sufficiently pled.  I discuss Counts One and Two
together, addressing first the claims based on Grant HD0 and
second the claims based on Grant 5M0.  I then discuss Count
Three.

1.    **Counts One and Two**

    a.    **Grant HD0**

Suits brought under the FCA must comply with Rule 9(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>Gold v. Morrison-Knudsen Co.</u>, 68 F.3d 1475, 1476-77 (2d Cir.1995).  Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Thus, to meet the requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993).  In short, a plaintiff must "set forth the who, what, when, where and how of the alleged fraud."  <u>United States ex rel. Woods v. Empire Blue Cross and Blue Shield</u>, No. 99 Civ. 4968 (DC), 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19, 2002) (citation omitted).

Plaintiff asserts that she makes allegations of false claims with respect to Grant HD0, whereby Cornell Medical received approximately $2.6 million to fund research on androgen metabolism.  (Pl. Br. at 19).  The amended complaint, however, contains no allegations of substance concerning this grant.  For example, in the entire amended complaint, plaintiff only makes one allegation in connection with this grant.  She states that:

> In 1998, Cornell Medical submitted a grant
> application requesting funds for a new
> connective tissue lab, purportedly necessary
> for 15 new protocols.  The application was
> approved.  Dr. New also amended her $2.6
> million grant to include significant reliance
> and contributions from the connective tissue
> lab.

(Compl. ¶ 103).

Nowhere in the amended complaint does plaintiff specify when defendants submitted false claims or conspired to submit false claims with respect to this grant.  She simply states that Dr. New amended the $2.6 million grant in reliance on a certain research protocol.  This falls far short of the "who, what, when, where and how" that plaintiff is required to allege.  Counts One and Two are dismissed to the extent they are based on Grant HD0.

### b.   **Grant 5M0**

The amended complaint also reveals that the allegations against NYPH with respect to Grant 5M0 are sparse and do not satisfy the heightened pleading standard under Rule 9(b).

Specifically, plaintiff makes two allegations against NYPH regarding false claims.  First, plaintiff asserts that no projections for any non-research outpatient visits were made for certain grant renewals.  (Compl. ¶ 92).  Second, plaintiff alleges that in April 2002, tests were performed on private patients in a federally-funded laboratory, but these patients were still billed.  (Id. ¶ 102).  Accordingly, NYPH was essentially earning profits at the expense of federal funds.

Neither of these allegations meets the Rule 9(b) heightened pleading standard.  The allegations do not specify who in NYPH was involved nor what NYPH's actual role was in the submission of these claims.  Plaintiff attempts to bridge many of these gaps by asserting that NYPH is "affiliated" with Cornell Medical.  (Id. ¶ 16).  Allegations of mere affiliation, however, are insufficient: plaintiff fails to allege what NYPH purportedly did, how it was purportedly involved in the fraud, or why it should be held responsible.  Counts One and Two against NYPH are therefore dismissed with respect to Grant 5M0.

2.   **Count Three**

The FCA contains a whistleblower provision, 31 U.S.C. § 3730(h), which was added in 1986 "to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime."  Neal v. Honeywell Inc., 33 F.3d 860, 861 (7th Cir. 1994).  Section 3730(h) provides that:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

- 19 -

"To sustain an action under § 3730(h), a plaintiff must prove (1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and (3) that he was terminated in retaliation for his conduct." Moor-Jankowski v. Bd. of Trustees of New York Univ., No. 96 Civ. 5997 (JFK), 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998).

It is true that "protected conduct" as it applies to the first element "is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions." Id. At the same time, under the FCA, "protected activity" should be interpreted broadly. See S. Rep. No. 345, 99th Cong., 2d Sess. 34 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5299. "Therefore, an employee's activities may be protected even where an FCA suit has not been filed." Faldetta v. Lockheed Martin Corp., No. 98 Civ. 2614 (RCC), 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000). But the conduct must have been in furtherance of an FCA action. Id. Moreover, only employers can incur liability under this section. See, e.g., Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 972 (D.C. Cir. 2001) ("Section 3730(h) plainly mentions only the 'employer' as incurring liability").

### a. **Cornell Medical**

Plaintiff has sufficiently alleged a retaliation claim against Cornell Medical. First, plaintiff alleges that she engaged in protected conduct under the statute. For example, in the amended complaint, plaintiff asserts that she became aware of

- 20 -

the false claims and statements in connection with the federal grant applications, and that she made her concerns regarding the false submissions known to Dr. New, the program director of the CCRC at that time.  (Compl. ¶¶ 110-11).  Although merely informing a supervisor of a problem is not enough to constitute protected conduct under the FCA, see, e.g., Shekoyan v. Sibley Intern., 409 F.3d 414, 423 (D.C. Cir. 2005), plaintiff here took additional steps.

Specifically, plaintiff also alleges that she submitted an internal complaint with supporting documentation to Dr. Loughlin, detailing the misuse of government funds by the CCRC, and that she supplemented the complaint on several occasions. (Compl. ¶ 114-15); see Fanslow v. Chicago Mfg. Ctr., Inc., 384 F.3d 469, 481-82 (7th Cir. 2004) (finding employee's internal complaints within corporation may be considered protected conduct for purposes of FCA retaliation claim).  Taken together, these two events demonstrate that plaintiff appeared to be directing her conduct "at exposing a fraud upon the government." Moor-Jankowski, 1998 WL 474084, at *10 (stating that to satisfy first prong of FCA retaliation claim, "the plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing fraud upon the government").

Second, plaintiff further alleges that defendants knew she was investigating Cornell Medical's false submissions. (Compl. ¶¶ 111, 114-16).  Dr. Sarafoglou made her concerns known to her supervisors, and to Dr. Loughlin.  Thus, defendants'

- 21 -

argument that they had no notice that plaintiff was engaging in protected conduct is unconvincing. (Def. Br. at 33). Plaintiff not only confronted Dr. New of the CCRC with her concerns, but she also presented these concerns to Cornell Medical's Scientific Advisory Committee ("SAC") and the Institutional Review Board ("IRB"). (Compl. ¶ 111). In fact, Dr. Hajjar, the vice provost and dean of Cornell Medical, even appointed Dr. Adam Asch to investigate Dr. Sarafoglou's allegations regarding the misuse of government funds. (Id. ¶ 116).

Third, plaintiff alleges that she was retaliated against for her protected conduct. (Compl. ¶¶ 112, 117, 122, 127, 128). Specifically, plaintiff asserts that in response to raising her concerns to Dr. New and Cornell Medical, she was excluded from meetings, Dr. New and Cornell Medical solicited complaints against her, and they recommended that she receive an "administrative referral" that would blemish her career. (Id. ¶ 112). She also alleges that once she filed an internal complaint, Dr. New engaged in further acts of retaliation, including, among other things, routinely blocking her patients' appointments, removing her from the pediatric endocrinology division attending on-call schedule, and referring metabolic patients to doctors at other hospitals instead of to her. (Id. ¶ 117). And finally, plaintiff alleges that she was retaliated against when she was formally removed from her position as the research subject advocate at CCRC (id. ¶ 122), and when she was given written notice that her faculty appointment would not be

renewed upon its expiration (id. ¶ 127).

In sum, the Court concludes that the retaliation claim against Cornell Medical has been sufficiently pled to survive this motion to dismiss.

**b.   Dr. New and Dr. Gotto**

Although plaintiff's retaliation claim against Cornell Medical is sufficient to withstand dismissal, her retaliation claims against Dr. New and Dr. Gotto cannot survive because neither of them was her "employer," and only employers can incur liability under § 3730(h). See, e.g., Shekoyan, 409 F.3d at 423. Here, Dr. Sarafoglou's employer is Cornell Medical and NYPH, not Dr. New or Dr. Gotto. (Compl. ¶ 15).  Dr. New and Dr. Gotto were her supervisors, but for purposes of the FCA, supervisors are not employers subject to liability under § 3730(h). See, e.g., Yesudian, 270 F.3d at 972 ("Section 3730(h) plainly mentions only the 'employer' as incurring liability, and the word 'employer' does not normally apply to a supervisor in his individual capacity."); Pollak v. Bd. of Trustees of the Univ. of Ill., No. 99 C 710, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004) (noting that courts have uniformly held that "supervisors . . . do not qualify as 'employers' subject to liability under the FCA").

**c.   NYPH**

Plaintiff has sufficiently alleged a retaliation claim against NYPH.  First, plaintiff alleges that she was an employee of NYPH (Compl. ¶ 15), who engaged in protected conduct by filing

an internal complaint to NYPH concerning the hospital's improper use of federal funds (id. ¶ 114).  NYPH tries to argue that plaintiff cannot consider herself an employee of NYPH because she was merely an "assistant attending physician."  (NYPH Reply Brief ("NYPH Reply") at 6).  At this stage of the proceedings, however, I must take plaintiff's allegations as true.  Hence, NYPH's argument that plaintiff was not an employee of NYPH does not help its cause.  Of course, NYPH may renew this argument at the summary judgment stage if plaintiff is unable to adduce proof of an employment relationship with NYPH.

Second, plaintiff alleges that NYPH was aware of her conduct.  For example, she states that she filed an internal complaint with Dr. Loughlin -- the chair of the Pediatric Department of NYPH -- about the hospital's improper use of funds. (Id. ¶ 114).

Third, plaintiff also alleges that she was retaliated against as a result of her protected conduct.  Specifically, she states that she was removed from her position within the Division of Pediatric Endocrinology at NYPH.  (Id. ¶ 124).

Accordingly, plaintiff's retaliation claim against NYPH states a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part.  Defendants' motions are granted as to all claims except the retaliation claims against Cornell Medical and NYPH.  As plaintiff has

already filed a prior complaint, the United States filed a
Complaint-In-Intervention, and the United States investigated
these matters for two years, I will not grant plaintiff leave to
replead.

SO ORDERED.

Dated:    New York, New York
          September 12, 2006

                                    _____
                                    DENNY CHIN
                                    United States District Judge

**APPEARANCES**

For Plaintiff-Relator:

                    MILBERG WEISS BERSHAD & SCHULMAN LLP
                        By:  Elaine S. Kusel, Esq.
                             Christian P. Siebott, Esq.
                             Ann Lipton, Esq.
                    One Pennsylvania Plaza
                    New York, NY  10119

                    TARTER KRINSKY & DROGIN LLP
                        By:  Laurent S. Drogin, Esq.
                    470 Park Avenue South
                    New York, NY  10016

For Defendants Weill Medical College of Cornell University,
      Antonio Gotto Jr., M.D., Barbara Pifel, Maria New, M.D.,
      Lauren Beamud, Susanna Cunningham-Rundles, Noel Maclaren,
      M.D., Gregory Siskind, M.D., Michael Wajnarajch, M.D.,
      Madeline Harbison, M.D., Patricia Giardina, M.D., James
      Bussel, M.D.:

                    HOGAN & HARTSON L.L.P.
                        By:  Stephen J. Immelt, Esq.
                             Tracey A. Tiska, Esq.
                    875 Third Avenue
                    New York, NY  10022

For Defendant The New York-Presbyterian Hospital:

                    EPSTEIN BECKER & GREEN, P.C.
                      By:  Stuart M. Gerson, Esq.
                    250 Park Avenue
                    New York, NY  10177-1211